546 P.2d 1169

**Joan SUTER, Plaintiff-Appellant and Cross-Respondent,**

v.

**Max O. SUTER, Defendant-Respondent and Cross-Appellant.**

No. 11788.

Supreme Court of Idaho.

Feb. 26, 1976.

Jay D. Sudweeks of May, May, Sudweeks & Fuller, Twin Falls, for plaintiff-appellant and cross-respondent.

J. William Hart of Hepworth, Nungester, Felton & Hart, Jerome, for defendant-respondent and cross-appellant.

McFADDEN, Justice.

Joan Suter, the plaintiff-appellant and cross-respondent, instituted this action for divorce and division of property against her husband, Max O. Suter, the defendant-respondent and cross-appellant. The trial court entered its judgment granting the divorce and dividing the community property. Joan Suter, the appellant, appealed from the judgment claiming the trial court erred in division of the community assets, and Max O. Suter, the respondent, cross appealed from the decree, also claiming that the trial court erred in its division of the property.

The Suters were married on January 1, 1952. They lived together until they separated in April, 1971. During their marriage three sons were born, only one of whom was underage at the time of the hearing of the divorce action in July, 1974. During the course of their marriage, the parties farmed land owned by respondent, and other farm property leased by respondent from his father.

In the spring of 1951, upon respondent Suter's graduation from high school and before his marriage, he received an oral gift of 80 acres of land from his parents, purportedly as a graduation gift. Suter

took possession of the property and commenced improving it by clearing it of sagebrush and ditching it. In 1958, a quitclaim deed to this land was executed by Mr. Suter's parents, naming both Mr. and Mrs. Suter as grantees therein.

Shortly after the marriage, Mr. Suter's father borrowed about $3,500 to purchase certain shares of irrigation water to be used on the premises. Suter paid on this loan for five years. In 1958, Suter's parents together with Suter and his wife executed another loan and mortgage for $6,500, which was sufficient to liquidate the first debt and make other improvements. At the time of trial, Suter testified he still owed about $2,500 on this debt. Both Suter and his father paid on the second loan.

During the trial a real estate broker testified that, at the time of trial, the irrigation water made available by the loan increased the market value of the 80 acres by $4,000. The farming operation grew during the marriage and Suter also began a trucking operation in advance of the 1971 separation. The parties stipulated that at the time of the separation the farm machinery was worth $7,368 and that it had increased in value to $20,000 at the date of the trial. The parties' three sons remained on the farm with Suter after the separation and he provided the home and support for the two sons who were single. After the separation, Mrs. Suter obtained employment and was living in a nearby town, but did not contribute financially to the support of the children or to the development of the community.

From the time of the separation until the time of trial, Mr. Suter had the use and control of all the community property except some furniture, a car, a television set and a bank account from which the appellant drew approximately $1,000.

The trial court found that the evidence failed to disclose any community improvements which enhanced the value of the 80 acres and for which the community would be entitled to reimbursement. In establishing the value of the community property, the court included the farm machinery at its stipulated value at the date of the trial rather than the value at the date of the separation, included all the vehicles involved in the trucking operation as community property even though some were purchased after the separation, and excluded all income from the 1974 crop and milk operation.

Appellant Joan Suter assigns as error: the trial court's determination that the eighty-acre farm was the respondent's separate property; its finding that she failed to demonstrate community improvements to the 80 acres for which the community would be entitled to reimbursement; and the failure of the trial court to divide the earnings received by respondent husband from the use of the community property during the three-year period between the separation and the trial of the case.

Respondent Max O. Suter, in his cross appeal, assigns error to the trial court's action in fixing the valuation of the farm machinery as of the time of trial ($20,000) as opposed to the valuation at the time of separation, and the action of the court in including the four vehicles used in the trucking business as a part of the community property.

The issues raised by the assignments of error classify themselves into three categories which will be discussed herein, i. e., the status of the eighty-acre farm, reimbursement for improvements to the farm, and the status of earnings after separation of the parties.

### The Eighty-acre Farm

■ The essence of the appellant's argument regarding the eighty-acre farm is that the respondent failed to establish a valid, oral gift from his parents to him in 1951, prior to his marriage to the appellant, and that this property should be treated and considered as community property of the parties by reason of the execution and

delivery to them of the quitclaim deed [1] wherein the two of them were named as grantees. The appellant argues that the respondent failed to establish that both of his parents joined in the oral gift of land, and thereby failed to carry his burden of proof that his parents made a valid, oral gift of the property in 1951. She further contends that the statute of frauds [2] invalidated the purported, oral gift of land. However, it is the conclusion of this court that the trial court did not err in its ruling that respondent Max O. Suter met his burden of proving the validity and enforceability of the 1951 oral gift and that he thereafter has owned the land as his separate property. I.C. § 32–903.

Idaho Code section 32–912 [3] requires that both spouses join in the instrument of conveyance of community real estate. The logic and policy underlying the statute require that both spouses also join in an oral gift of community real estate. Since a married person, acting alone, cannot encumber, sell, or otherwise convey community real estate by document, the same prohibition against solitary action applies with equal force to an oral effort to achieve the same result. The essence of joint action applies regardless of the manner in which the action is manifested. No one questions that in 1951 the elder Suters held a community interest in the eighty-acre farm.

Both of them consequently had to join in the purported gift of the land that year to their son, Max Suter, to make the gift valid. It is the conclusion of this court that the testimony of all interested parties at the trial provides sufficient, competent evidence to sustain the trial court's finding that the respondent's parents gave him the land in 1951. Max Suter testified about the manner in which he acquired the 80 acres: "I obtained that when my *parents* told me I could have that as a graduation gift, raw ground." (Emphasis supplied.) Equally indicative of a joint gift, the appellant herself testified concerning the land: "His *folks* did give him that amount of ground for and as a graduation gift." (Emphasis supplied.) "Findings of fact shall not be set aside unless clearly erroneous." I.R.C.P. 52(a). The explicit testimony of both immediate parties enables the finding of fact of a gift to Mr. Suter from both of his parents to withstand challenge.

An exception to the requirement of a writing to convey land preserves the validity of the joint gift of the eighty-acre parcel in 1951. The appellant based her second challenge on I.C. § 9–503, [4] which requires a written instrument to transfer an interest in real property. This court previously has held that partial or complete performance of an oral contract to convey land takes the transaction out of the stat-

---

1. This deed was purportedly dated July 1, 1957, although acknowledged on March 4, 1957; it was recorded March 4, 1958.

2. *See* n. 4, *infra.*

3. I.C. § 32–912, as in force at the time of the oral gift of the 80 acres, provided:

 "32–912. Husband's control of community property.—The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: provided, that the husband or wife may, by express power of attornay, give to the other the complete power to sell, convey or encumber said community prop-

erty, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."

 A subsequent amendment, S.L.1974, ch. 194, § 2, maintains the prohibition against solitary disposition of community real estate.

4. I.C. § 9–503 provides:

 "Transfers of real property to be in writing. —No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

ute of frauds. I.C. § 9–504; *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802 (1963); *McMahon v. Auger*, 83 Idaho 27, 357 P.2d 374 (1960); *Anselmo v. Beardmore*, 70 Idaho 392, 219 P.2d 946 (1950); *Wood v. Hill*, 70 Idaho 93, 212 P.2d 391 (1949). This court, however, has not addressed the requirement of a writing in the context of an oral gift of real property. Courts in other states have examined such a relationship and their conclusions merit application in this case.

■■■ Oral gifts of land generally fall within the terms of the statute of frauds and are invalid, but the conditions of a particular case can take it out of the operation of the statute, especially when the donee has taken exclusive possession under the gift and has made valuable and permanent improvements to the realty. *Green v. Brown*, 37 Cal.2d 391, 232 P.2d 487 (1951); *Andreotti v. Andreotti*, 224 Cal. App.2d 533, 36 Cal.Rptr. 709 (1964); *Pocius v. Fleck*, 13 Ill.2d 420, 150 N.E.2d 106 (1958); *Lynch v. Lynch*, 239 Iowa 1245, 34 N.W.2d 485 (1948); *Lembke v. Lembke*, 194 Iowa 808, 187 N.W. 863 (1922); *Holohan v. McCarthy*, 130 Or. 577, 281 P. 178 (1929); *Lang v. Lang*, 140 Pa.Super. 356, 14 A.2d 216 (1940); *Willacy County Water Control and Improvement Dist. No. One v. Todd*, 255 S.W.2d 320 (Tex.Civ.App.1952); *Norwood v. Childress*, 250 S.W.2d 927 (Tex.Civ.App.1952); *Steinman Coal Corp. v. Fleming*, 145 Va. 731, 134 S.E. 696 (1926); *Roesch v. Gerst*, 18 Wash.2d 294, 138 P.2d 846 (1943). The testimony at the trial sufficiently supports the finding of the trial court that the respondent took exclusive possession of the 80 acres after the 1951 oral gift and thereafter proceeded to clear the land and make other permanent improvements. It is the conclusion of this court that such possession and improvements took this case out of the statute of frauds and preserved the validity of the oral gift established by clear and convincing evidence.

In summary, it is the conclusion of this court that the respondent's parents conveyed title to the eighty-acre tract of land to the respondent through an oral gift, at a time when he was unmarried, and that the subsequent quitclaim deed executed in 1957 to both parties conveyed no title. We thus find no error in the trial court's ruling.

*Reimbursement for Improvements*

■■■ The conclusion that the eighty-acre farm is the separate property of the respondent raises the appellant's alternative issue of reimbursement to the community for community funds utilized to improve a spouse's separate property. This court previously has set forth principles to determine the community's entitlement to and measure for such reimbursement from the separate estate. The natural increase in value of a spouse's separate property during the marriage generally is not community property. *Hiatt v. Hiatt*, 94 Idaho 367, 487 P.2d 1121 (1971); *Gapsch v. Gapsch*, 76 Idaho 44, 277 P.2d 278 (1954). However, when community efforts, labor, industry, or funds enhance the value of separate property, such enhancement is community property for which the community is entitled to reimbursement. *Hiatt v. Hiatt, supra; Tilton v. Tilton*, 85 Idaho 245, 378 P.2d 191 (1963); *Gapsch v. Gapsch, supra*. The measure of the reimbursement for community expenditures on separate property is the increase in value of the property attributable thereto, not the amount or value of the community contribution. *Hooker v. Hooker*, 95 Idaho 518, 511 P.2d 800 (1972); *Hiatt v. Hiatt, supra; Tilton v. Tilton, supra; Gapsch v. Gapsch, supra*. The party seeking such reimbursement to the community carries the burden of demonstrating that the community expenditures have enhanced the value of the separate property, and the amount of the enhancement. *Hooker v. Hooker, supra*.

■■■ The trial court found that the testimony failed to disclose any community improvements which enhanced the value of the 80 acres. We agree that the appellant failed in her burden of demonstrating the

amount of enhancement attributable to community expenditures, with one exception. We agree that no testimony demonstrated the amount of enhancement in value due to such improvements as the leveling of the land or the pouring of a concrete ditch. Uncontroverted testimony is present in the record, however, that the 30 shares of irrigation water increased the value of the land by $4,000. The respondent paid on the two loans to secure those shares of water during the marriage; such payments were expenditures of community funds. The entitlement to reimbursement remains uncertain, however, because the trial court found that the unpaid balance of $2,500 was a separate debt of the respondent and not a community debt. The trial court moreover, made no finding or conclusions regarding the separate or community status of the 30 shares of water. We consequently reverse the trial court's disposition of the parties' property with directions to make findings of fact and conclusions of law regarding the enhancement due to and the status of the 30 shares of irrigation water, and to receive such testimony on this issue as the district court deems necessary to make such findings and conclusions.

*Earnings and Acquisitions after Separation*

The third issue presented focuses upon the inclusion as community property of the parties' individual earnings after their 1971 separation and the acquisitions of personal property in the farming and trucking operations after the separation. Both parties acknowledge that the trial court did not include in the community the earnings of the parties during the three-year separation, and that the court did include the farm machinery and trucking equipment at values as of the time of trial.

I.C. § 32–903 states:

"Separate property of husband and wife.—All property of either the husband or the wife owned by him or her before marriage, and that acquired after-

ward by either by gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property."

I.C. § 32–906 provides:

"Community property—Conveyances between spouses.—All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belongs to the wife, and they are not liable for the debts of the husband. Rents and profits as used in this chapter shall mean income only. \* \* \*."

 The explicit language of I.C. § 32–906 requires that the earnings of the respondent after separation be included as community property. A marriage continues, despite a separation, until a decree of divorce. I.C. § 32–601; *In re Duncan*, 83 Idaho 254, 360 P.2d 987 (1961); *Newell v. Newell*, 77 Idaho 355, 293 P.2d 663 (1956). The income of the respondent during the three-year separation was income that meets the terms of I.C. § 32–906 and became community property. The respondent's income became community property regardless of its status as income from his separate property or from the community property over which he exercised the use and control during the separation. *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973). The district court therefore was correct in including as community property the farm machinery and the trucking equipment with their valuation fixed as of the time of the trial. We consequently reject the respondent's argument that such valuation and inclusion was error. Because the appellant did not carry her burden of

proof, we also reject the appellant's argument that the trial court erred in failing to include as community property the earnings which the respondent received from the use of the community property during the separation.

The respondent, to support his contention that the trial court erred in valuing the farm machinery as of the time of the trial and in including as community property certain interests in trucks acquired after the separation, argues that the Idaho community property statutes violate his right to the equal protection of the laws, as guaranteed in the Constitution of the United States. His argument focuses upon I.C. § 32–906, under which all his earnings and accumulations from such earnings are community property even though acquired after the separation of the parties, and upon I.C. § 32–909,[5] under which the earnings and accumulations of the appellant wife are her separate property when acquired after the separation. The respondent contends that those statutory provisions lead to a result which discriminates against him, and asks that I.C. § 32–909 be construed to render the earnings of both spouses after separation their separate property.

■ We agree that I.C. § 32–909 results in unequal treatment for a husband and a wife as regards their individual earnings after a separation. The different classification of a husband and wife solely on the basis of sex "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990–91 (1920), *quoted with approval in Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229 (1971). The unequal treatment accorded a husband and wife through the operation of I.C. § 32–909 is arbitrary on its face and demonstrates no substantial relation to the object of community property legislation. Idaho Code section 32–909 creates an unconstitutional distinction in the division of marital property upon divorce and therefore is a denial of the equal protection of the laws as guaranteed in the fourteenth amendment of the Constitution of the United States. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Reed v. Reed, supra.*

■ Since the basic concept of community property law is to recognize that all property acquired during marriage is presumably community property, the exception created by I.C. § 32–909 to this basic principle must fall. We note that although the voidance of I.C. § 32–909 will render both spouses' post-separation earnings community property, I.C. § 32–712 provides for the just assignment of community property upon the dissolution of the marriage, regardless of the ground for divorce. The inclusion of all post-separation earnings of both spouses as community property, therefore, neither prohibits nor requires that they be assigned to the spouse who earned them.

The decree is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No costs allowed.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.

---

5. I.C. § 32–909 provides:
 "Earnings of wife living separate from husband.—The earnings and accumulations of the wife and of her minor children living with her or in her custody, while she is living separate from her husband are the separate property of the wife."