834 P.2d 298

Charles H. SWOPE, Plaintiff–Appellant–Cross Respondent,

v.

Isabel SWOPE, Defendant–Respondent–Cross Appellant.

No. 19115.

Supreme Court of Idaho,
Boise, February 1992 Term.

May 27, 1992.

Webb, Pedersen & Webb, Twin Falls, for plaintiff-appellant. Lloyd J. Webb, argued.

Hepworth, Nungester & Lezamiz, Twin Falls, for defendant-respondent. Jeffrey E. Rolig, argued.

BAKES, Chief Justice.

This is a second appeal in a divorce action arising from a decision of the magistrate court following remand from this Court in *Swope v. Swope*, 112 Idaho 974, 739 P.2d 273 (1987) (*Swope I*). Both parties appealed to the district court from the magistrate's distribution of the property. The district court affirmed in part and reversed in part the magistrate court's decision. Both parties again appealed the district court's decision to this Court. A summary of the facts are as follows.

Charles and Isabel Swope were married on July 30, 1976. Charles filed for divorce on November 7, 1980. On January 21, 1981, the trial court granted Charles' motion for partial summary judgment to dissolve the marriage, but did not resolve the property division issues at that time. In our opinion in *Swope I, supra*, we described the property which was involved as follows:

> At the time of marriage, Charles owned an undivided 1/4 interest in a partnership which owned both the real and personal property associated with the operation of the Pepsi Cola Bottling Company of Twin Falls. The business was incorporated on March 1, 1979, but the real property remained in the partnership and was leased to the corporation. Charles received stock in the corporation and maintained his same percentage ownership in the partnership. The corporation made a Subchapter "S" election to be taxed as a partnership pursuant to the Internal Revenue Code and the Idaho Income Tax Act. [For his one-fourth share of the partnership assets transferred to the corporation, Charles received four thousand shares of stock and $100,000 in 12% debenture notes.]
>
> During the years that the parties were married, income taxes on the undistributed earnings from both his separate property interest in the partnership and from the retained earnings of the Subchapter "S" corporation were paid with community funds by Charles.
>
> Charles's interest in the bottling company was sold on June 6, 1980, for $840,000, with $125,000 paid down and monthly payments of $10,007.06 at 15% per annum on the unpaid principal balance. This sale included all of Charles's corporate stock and debentures in the corporation as well as his partnership interest in the real property....
>
> ....
>
> At the time that Charles sold his 4000 shares of corporate stock on June 6, 1980, Charles' share of the undistributed taxable income as defined by 26 U.S.C. § 1373, which had been retained by the corporation, was the sum of $39,171.

That income was reported on Charles' joint income tax return and he paid income tax on that undistributed taxable income, apparently with community funds.

112 Idaho at 979, 982, 739 P.2d 273 (footnote omitted).

In *Swope I*, the magistrate originally determined that the retained earnings in both the partnership and the corporation were not community property. As a result, the magistrate concluded that Isabel was not entitled to a share of the proceeds of the contract of sale.

In *Swope I*, this Court held that the retained earnings in the separate property partnership were community property and remanded to the trial court to "determine the interest of the community in Charles' otherwise separate property stock and debentures, resulting from the community interest in the partnership retained earnings which were invested in the stock and debentures...." 112 Idaho at 984, 739 P.2d 273. We held that if the retained earnings of the partnership had enhanced the value of the partnership assets transferred to the corporation, then the community would be entitled to an interest in the corporate stock and debenture notes and in the proceeds of the June 6, 1980, sale of those stocks and notes. We also directed the trial court to determine the community interest in the interest income accruing on the $100,000 of debentures.

On remand, the magistrate concluded that the community was not entitled to any reimbursement for the retained earnings in the partnership because Isabel had not shown any enhancement in the value of the partnership assets or business as a result of the retained partnership earnings. Therefore, the magistrate concluded that the community had no interest in Charles' separate property stock and debenture notes of the corporation as a result of the retained earnings in the partnership. However, the magistrate did hold that the $39,-171 of retained earnings of the corporation was community property or, at least that Isabel was entitled to one-half of those corporate retained earnings because the

court deemed those retained earnings to have been distributed to Charles as of the date that Charles sold his stock, apparently on the assumption that the sale price of the stock was $39,171 higher than it would have been without the retained earnings in the corporation. The magistrate refused to award Isabel judgment interest on the interest earned on bonds which the magistrate had awarded to her in the divorce decree but which Charles retained and controlled from August, 1983, to April, 1988, holding that Isabel was only entitled to "the interest applicable to the particular bond or certificate of deposit according to its terms."

Isabel appealed the magistrate's decision regarding the valuation of the partnership, the failure to award her a portion of the contract of sale proceeds, and the amount of interest which had accrued on the interest earned by the bonds. Charles cross appealed the magistrate's decision to award Isabel one-half of the retained earnings in the corporation.

On appeal, the district court reversed the magistrate's decision not to award Isabel one-half of the partnership retained earnings, which the district court valued at $65,765.00, entitling Isabel to $32,882.50. The district court affirmed the magistrate's decision to award Isabel one-half the retained earnings in the corporation and awarded Isabel prejudgment interest on her share of the partnership and corporate retained earnings. The district court reversed the trial court's determination that Isabel was not entitled to judgment interest on the interest which had accrued on the bonds that were awarded to Isabel. The district court held that Isabel was entitled to judgment interest at 18%, pursuant to I.C. § 28–22–104. Charles appealed the district court's decision; Isabel cross appealed.

When we review a case appealed from a district court's appellate review of a magistrate's decision, the district court's decision is instructive; however, we independently review the decision of the magistrate. *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991). If the magistrate's

findings of fact are supported by substantial and competent evidence, we will uphold those findings on appeal. I.R.C.P. 52; *McNelis, supra.*

## I

First, we consider the magistrate's determination that the community is not entitled to reimbursement for the earnings retained in the partnership. In its findings of fact and conclusions of law, the magistrate found that the partnership retained $75,765.00[1] of undistributed profits between the date of the marriage and the date of incorporation. The magistrate on remand considered the partnership retained earnings as community property, but concluded that the community was not entitled to reimbursement because Isabel had not made any showing that those earnings contributed to the enhancement in value of the partnership business. The magistrate found that, while the value of the business increased during the years of the marriage, it could have been due to any or all of the following factors:

(a) Socioeconomic trends of the consuming population

(b) Climatic conditions

(c) Trends in national popularity

(d) National and local advertising

(e) Capital invested in the business

(f) Ability to finance

(g) Ability to provide product to meet demand

(h) Business management

(i) Value of the franchise

(j) Value of the tangible assets of the business

(k) Amount of liability

The magistrate explained its decision as follows:

There is no question that the value of the plaintiff's interest in the Pepsi Cola Bottling Company of Twin Falls, Inc. increased over the years of the marriage. The real question to be answered by the defendant was why did the value of the plaintiff's interest in the Pepsi Cola Bottling Company of Twin Falls, Inc. increase. If this increase is due solely to the use of the [$65,765.00] community property, the defendant would be entitled to one-half of the value of the increase. The exact reason for the increase in value of the plaintiff's interest in the Pepsi Cola Bottling Company of Twin Falls, Inc. has not been answered by the defendant. It is the conclusion of this court that the increase in value could have been attributable to any or all of the factors numerated in Finding of Fact No. 1. To determine that any or all of the increase in valuation of the plaintiff's interest in a nationally franchised bottling company is attributable solely to the [$65,765.00] of undistributed profits is pure speculation. Accordingly, the defendant has failed in her burden to show the value of the enhancement of the plaintiff's interest in the Pepsi Cola bottling Company of Twin Falls, Inc. and is not entitled to reimbursement.

In *Swope I,* we held that the right of the community for reimbursement from the separate partnership property was based on the enhancement in value rule, stating:

In situations such as this, the measure of the community's reimbursement was first set out in *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954) as follows:

"As a general rule where the separate property of the husband is improved or his equity therein enhanced by community funds the community is entitled to be reimbursed from such separate estate unless such funds used for improvement or enhancement are intended as a gift. The claim for reimbursement has been held to be in the nature of a charge or an equitable lien against such separate property so improved or the equity of the husband therein enlarged. It would appear that the measure of the compensation generally is the increased value of the property due

---

1. As the district court noted in its decision, the $75,765 figure, used by the magistrate in the first decision and by this court in *Swope I,* includes an arithmetic error. The actual amount should be $65,765. The district court stated in its decision that both parties agreed to the $65,765 figure in oral argument.

to the improvement; in instances where his equity therein has been increased through the application of community funds to the payment of the debt thereon the measure should be the amount by which such equity is enhanced." 76 Idaho at 53, 277 P.2d at 283.

Later, in *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976), we stated, as quoted by the trial court herein:

"*The measure of reimbursement* for community expenditure on separate property *is the increase in value of the property attributed thereto, not the amount of value of the community's contributions.* In addition, the party claiming reimbursement for community expenditure has the burden of demonstrating that there has been an enhancement of separate property due to those efforts or expenditures and the value of that increase." 97 Idaho at 465, 546 P.2d at 1173.

112 Idaho at 983 (emphasis in original).

■ Isabel argues that, under *Gapsch, supra,* the community is entitled to either a dollar-for-dollar reimbursement, or the amount to which the value of the separate property was enhanced by the community contribution. However, in our *Swope I* opinion we directed the magistrate on re-

mand to apply the enhancement in value rule set forth in *Gapsch* and *Suter, supra.* That is the law of the case and is binding on the magistrate court, the district court, and on this appeal. *See, Airstream, Inc. v. CIT Financial Serv.,* 115 Idaho 569, 575, 768 P.2d 1302, 1308 (1988) ("[W]here, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to through its subsequent progress, both in the trial court and upon subsequent appeal.... *Suitts v. First Security Bank of Idaho,* 110 Idaho 15, 713 P.2d 1374 (1985) (*quoting from Carlson v. Northern Pacific Rail Co.,* 86 Mont. 78, 281 P. 913, 914 (Mont. 1929)"); *Matter of Barker,* 110 Idaho 871, 719 P.2d 1131 (1986). Accordingly, the magistrate correctly applied the enhancement in value rule.

■ There was substantial evidence to support the trial court's finding of no enhancement in the value of Charles' separate partnership interest. Experts for both sides testified that the factors contributing to an increase in value of a business such as the bottling company in this case could not be separately identified.[2]

Defendant's Exhibit # 7 indicates that $186,988 of capital remained in the partner-

---

2. Charles' expert, James Stoddard, a certified public accountant, testified as follows:

Q. Specifically relating to the business in this case are we able to look at the increase in value of the business and say whether or not the retention of earnings resulted in any of that increase in value?

A. I don't believe we're able to say that.

Q. Or assuming for the moment for argument that the increase in retention of earnings or increase in partners' capital account was a factor in the increase of value of a business are we able to assign any proportionate amount of the increase in value to that retention of earnings factor?

A. I don't believe we are.

    \*   \*   \*   \*   \*   \*

Q. ... [D]efine for the court what a retained earning is.

A. Retained earnings, in accounting terms that we use in any kind of a profession, is an amount that represents the difference between the book value of the assets and the book value of the liabilities....

Q. Does the book value necessarily reflect the fair market value of an asset?

A. No.

Q. Generally speaking, in your experience in dealing with accounting in businesses, does it ordinarily represent the fair market value of an asset?

A. Ordinarily it does not.

    \*   \*   \*   \*   \*   \*

Q. Does [an] increase in retained earnings result in any identifiable asset?

A. Nothing that you can specifically identify with any one asset.

Q. Does it necessarily reflect any increase in the value of the business?

A. Not necessarily.

Additionally, Isabel's expert provided the following testimony:

Q. Is it possible in a production based industry such as this one to, at any point in time, say that a given dollar of retained capital can be traced into a given dollar of value in the business?

A. I think what you're asking is can a specific dollar of capital be placed in any specific asset of the business?

Q. Yes.

ship immediately after the transfer of the other partnership personal property assets to the corporation. Also, other testimony indicates that the cash retained in the partnership after the transfer of the bottling business, which was enhanced by the monthly payments received pursuant to the lease of the real property to the corporation, was distributed to the partners subsequent to the transfer of the personal property to the corporation. From this record the magistrate had no way of determining whether the capital remaining in the partnership contained the retained earnings or whether the retained earnings were transferred with the other assets to the corporation. Furthermore, there was no way of determining whether the sale proceeds included payment for any earnings retained in the partnership. As the magistrate stated, "this court is unable to determine by anything but speculation what contribution the [$65,765.00] had in the transaction involving the partial transfer by the plaintiff of his partnership interest in the ... partnership for debentures and stock in the [corporation] and the eventual sale of those debentures and stock for $840,000.00." The magistrate was in the best position to evaluate the conflicting testimony and the supporting exhibits. Accordingly, we affirm the magistrate's conclusion that Isabel "failed in her burden to show the value of the enhancement of the plaintiff's stock interest in the Pepsi Cola Bottling Company of Twin Falls, Inc. and is not entitled to reimbursement."

## II

Next we consider whether the community was entitled to a share of the $39,171 in

A. No, it can't.
    \*    \*    \*    \*    \*    \*

A. Well, as I stated, when the equity was withdrawn from the partnership there's no way to tell which dollar was withdrawn, whether it was the first dollar that went in or was the last dollar that went in.
    \*    \*    \*    \*    \*    \*

Q. And I think you've already answered my question that there's no way that we can take, isolate one of those factors and say that that particular factor resulted in X number of dollars increase in our business, it's a composite, I believe you said earlier.

retained earnings in the corporation. The magistrate awarded Isabel $19,585.50, half of the retained corporate earnings, apparently concluding that those retained earnings were community property.

■ Our earlier opinion in *Swope I,* pointed out that *Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1974) and *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974), held that the community has no interest in the retained earnings of a corporation, the stock of which is held as separate property by one of the stockholders, unless the stockholder has sufficient control of the corporation to be able to cause the earnings to be retained. In this case, Mr. Swope had only a 25% interest in the corporation. No community interest was created in his separate stock as the result of the retained corporate earnings, and the magistrate erred by holding otherwise. *Swope v. Swope, supra; Simplot v. Simplot, supra; Speer v. Quinlan, supra.*

## III

Next, regarding Isabel's claim to interest on the interest income earned by the bonds which were awarded to Isabel in the original divorce decree but which Charles retained until April, 1989, Charles argues that Isabel is entitled to only an interest rate equal to the actual investment yield of the bonds, as the magistrate originally awarded. The district court overturned the magistrate's holding and awarded Isabel statutory judgment interest on the interest income earned by the bonds.

■ We conclude that the magistrate erred by awarding only an interest rate

A. That's the word I used.
    \*    \*    \*    \*    \*    \*

Q. And when we talk about retained earnings in a business am I correct that we're not talking about some sum that sits in a savings account or that sits in an identifiable bank account. We're not talking about something like that are we? Necessarily.

A. No.

Q. It may or may not be reflected in cash, is that also correct?

A. It's impossible to tell you where it's reflected.

equal to the actual investment yield of the bonds. The magistrate determined that Isabel was not entitled to judgment interest by concluding that I.C. § 28–22–104(2)[3] applies only to money judgments, and the judgment in question involved "items of property to be transferred, not money due on the judgment." However, in our view, the district court correctly applied I.C. § 28–22–104(2), stating:

> The starting point for resolution of this issue is the applicable statute [I.C. § 28–22–104]. The statutory rate applies to money due on judgments. Here, *Isabel was denied the cash payment of the interest on the asset awarded in the decree. This cash payment can be viewed as money due on the judgment.* It is held that the appropriate rate is, therefore, the statutory judgment rate. (Emphasis added.)

We agree. The magistrate's decision to limit the award of interest to the actual investment yield of the bonds is reversed.

### IV

Finally, with regard to Isabel's claim for prejudgment interest, since we have concluded in Parts I and II that the community is not entitled to reimbursement because there was no enhancement in the value of Charles' separate partnership interest, and because the community had no interest in Charles' separate property stock arising from the retained earnings in the corporation, there is no prejudgment amount due from Charles to Isabel, and therefore the prejudgment interest issue is moot.

### V

In conclusion, we affirm the magistrate's finding that the community is not entitled to reimbursement because Isabel did not prove that the value of Charles' separate property business was enhanced by the partnership retained earnings. We further hold that the community had no interest in Charles' separate property stock as the result of earnings retained in the corporation

---

3. I.C. § 28–22–104(2), entitled "Legal rate of interest," reads in part: "The legal rate of interest on money due on the judgment of any compe-

and thus had no interest in the proceeds of the contract of sale of that stock. Isabel is not entitled to an award of prejudgment interest. We do conclude, however, that Isabel is entitled to receive post-judgment interest under I.C. § 28–22–104 on the interest earned by the bonds she was awarded in the original divorce decree.

This case is remanded to the magistrate to enter a final judgment consistent with this opinion.

BISTLINE and JOHNSON, JJ., and REINHARDT, J. Pro Tem., concur.

McDEVITT, J., concurs in result.

tent court or tribunal shall be the rate of five percent (5%) plus the base rate."