## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 48478

| | | |
|---|---|---|
| AMY MARIE HEPWORTH, nka AMY MARIE EVANS, | ) ) ) | Opinion Filed: November 23, 2021 |
| Petitioner-Appellant, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | |
| JAMES HEPWORTH, | ) ) | |
| Respondent. | ) ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Diane M. Walker, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming the orders of the magistrate court, <u>reversed</u>; and <u>case remanded</u>.

Bevis, Thiry & Schindele, P.A.; Philip M. Bevis, Boise, for appellant. Philip M. Bevis argued.

Sanderson Law Office; James K. Sanderson, Afton, WY, for respondent. James K. Sanderson argued.

_____

HUSKEY, Chief Judge

Amy Marie Hepworth, nka Amy Marie Evans, appeals from the district court's decision affirming the magistrate court's orders of post-judgment interest pursuant to Idaho Code § 28-22-104(2). Amy alleges the district court erred because it concluded the divorce decree was the judgment referenced in I.C. § 28-22-104(2), thereby precluding Amy from obtaining prejudgment interest pursuant to I.C. § 28-22-104(1). In this case, the relevant judgment was not the divorce decree but, instead, the later-entered 2017 and 2018 money judgments. As a result, Amy was eligible for an award of prejudgment interest pursuant to I.C. § 28-22-104(1). Accordingly, we reverse the district court's decision affirming the magistrate court's order and remand the case for further proceedings consistent with this opinion.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 2015, the magistrate court issued a divorce decree, divorcing Amy and James Hepworth pursuant to their stipulation resolving custody, child support, and division of property and debt. The decree awarded Amy one-half of the C purchase shares and one-half of the D purchase shares of Redtop Holding Limited (Redtop Holding). Because the rights in the shares could not be transferred at the time the decree was entered, James retained the shares, holding Amy's portion in trust. James was required to provide Amy all necessary information regarding her shares, give her notice of any sale, and promptly notify her in writing of the occurrence of any event or receipt of any notification regarding her shares.

Despite these requirements, on or about November 1, 2017, James liquidated all shares in Redtop Holding, including Amy's shares. James initially received $1,795,666.10 from the sale, which was deposited into his personal bank account. An additional $66,488.06 from the sale was held in escrow for a twelve-month period. James attempted to conceal his receipt of the $1,795,666.10 by transferring the money to the bank account of Swarthep LLC, a company he formed in Wyoming two days prior to the sale. James did not notify Amy that he sold the Redtop Holding shares, that he received $1,795,666.10 from the sale of the shares, that an additional amount of money was held in escrow after the sale, or that he transferred the funds from the sale of her shares to another business entity. One year later, on November 5, 2018, James received a wire transfer of $66,488.06, representing the funds that had been held in the escrow account. James did not notify Amy that he received the escrow funds or transfer her portion of the funds to her.

During the time of the sale and funds transfer, James and Amy were involved in ongoing litigation regarding child custody and child modifications. As part of this litigation, Amy requested information regarding her Redtop Holding shares, including their potential sale. Despite a court order to do so, James did not provide Amy with any information regarding her shares. Amy had information that James purchased some luxury vehicles, including a Lamborghini, and she suspected James had sold her shares without telling her. Amy contacted Redtop Holding and received a letter indicating James had sold all of their shares in the company.

Because the divorce decree allocated the shares of stock, but did not include a value of the shares, Amy could not execute on the divorce decree to collect her portion of the sale from James. Amy filed a petition to enforce the divorce decree and a motion for partial summary judgment,

requesting the magistrate court determine the value of her shares to be one-half of the total amount James received from the sale and order James to compensate her accordingly. In the motion to enforce the divorce decree, Amy specifically requested that she be awarded interest at the statutory rate pursuant to I.C. § 28-22-104 from the date James received the money from the sale. Amy provided a calculation using a statutory rate of 6.250% annual interest but she reserved the issues of the amount of interest and attorney fees for trial.

James continued to deny receiving the proceeds from the sale and contested Amy's motion for partial summary judgment, despite lack of a factual or legal basis to do so. During the ensuing litigation, James failed to timely answer discovery, failed to appear for and walked out of scheduled depositions, did not post a court-ordered bond, and contested the entry of a money judgment to reflect the amount Amy was owed under the divorce decree. The magistrate court granted Amy's motion for partial summary judgment and awarded Amy a money judgment (2017 money judgment) against James for $897,833.05 representing one-half of the $1,795,666.10 he received on November 7, 2017. The 2017 money judgment did not include pre- or post-judgment interest. James subsequently conceded that Amy was entitled to one-half of the escrow funds, and the magistrate court awarded Amy another money judgment (2018 money judgment) for $33,244.03, representing one-half of the $66,488.06 James received on November 5, 2018.

The magistrate court held a trial to determine if, and at what rate, interest on the 2017 and 2018 money judgments should apply. Amy argued, in part, that pursuant to I.C. § 28-22-104(1), her share of the money became due when James sold her shares and, as a result, she should receive prejudgment interest (12% per year) from the time James received the money from the sale of her shares until the time the magistrate court entered the respective money judgments. After the money judgments were entered, Amy argued she was entitled to post-judgment interest (approximately 7.125% per year) pursuant to I.C. § 28-22-104(2). James argued Amy waived any claim for prejudgment interest and, alternatively, that pursuant to I.C. § 28-22-104(2) any interest on the 2017 and 2018 money judgments should be calculated at the post-judgment rate from the date the magistrate court entered the money judgments, not the date James received the money.

After trial, the magistrate court found that Amy was entitled to interest from the day James received the money from the sale of Amy's shares. In support of this conclusion, the magistrate court found: (1) James received the full benefit of Amy's money without her permission or authority, concealed receipt of the funds, and improperly kept the funds for his own use;

3

(2) because the divorce decree did not include a value of Amy's shares, it did not serve as a money judgment and, thus, Amy had no ability to collect her portion of the assets from James without a subsequent judgment from the court; (3) case law supported an award of interest; (4) equity supported an award of interest because James should not benefit from using Amy's money without paying interest; and (5) there was "no cogent reason why interest on the sum should not be awarded to Amy from the date James received the funds."

The magistrate court reasoned that because the divorce decree was the relevant judgment and James' sale of the shares occurred after its entry, I.C. § 28-22-104(2) was applicable and Amy could only receive post-judgment interest. Accordingly, the magistrate court awarded Amy post-judgment interest pursuant to I.C. § 28-22-104(2) from the date James sold the shares with an interest rate of 6.250% on the 2017 money judgment of $897,833.05 and an interest rate of 7.375% on the 2018 money judgment of $33,244.03.

James appealed to the district court and Amy cross appealed. While James conceded that interest should apply to his sale of Amy's shares, he alleged the magistrate court erred by ordering the accrual of interest from the date he received the funds, instead of the date the court entered the money judgments. In her cross appeal, Amy asserted the magistrate court erred by failing to award prejudgment interest from the time James received the money from the sale of the shares until the entry of the money judgments.

The district court heard argument and noted the "very strong equitable argument" for ordering interest on the money judgments. Ultimately, the district court found that James' conduct fell "below legal and decency standards" and case law supported an award of interest from the time James received the money from the sale of the shares. Accordingly, the district court affirmed the magistrate court's order. However, the district court did not address Amy's contention that she is entitled to prejudgment interest from the time James received the money from the sale of the shares until the entry of the money judgments. Amy appeals.

## II.

## STANDARD OF REVIEW

Where a district court has affirmed the decision of a magistrate court on intermediate appeal, "this Court must focus on the findings of fact and conclusions of law made in the magistrate court proceeding and determine whether they were (1) supported by the evidence in the record and (2) consistent with the law." *Herr v. Herr*, ___ Idaho ___, ___, ___ P.3d ___, ___ (2021). If so,

4

we affirm the district court's decision as a matter of procedure; if not, we must reverse. *Id*. at ____, ____ P.3d at ___.

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002).

We review an award of prejudgment interest under the abuse of discretion standard. *Med. Recovery Servs., LLC v. Neumeier*, 163 Idaho 504, 511, 415 P.3d 372, 379 (2018). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### III.

### ANALYSIS

Amy makes two arguments on appeal. First, she asserts that the relevant judgment for purposes of I.C. § 28-22-104(2) is one that has a readily ascertainable monetary value. Because the divorce decree awarded her stock, not money, it is not the relevant judgment for purposes of the statute. The relevant judgments, she asserts were the money judgments entered in 2017 and 2018. Second, Amy argues that James' sale of her Redtop Holding shares prior to the entry of those judgments triggered the application of I.C. § 28-22-104(1) and, pursuant to that subsection, Amy's share of the money "became due" when James received the money from the sale. As a result, Amy asserts that she should be awarded prejudgment interest from the date James received money from the sale until the magistrate court entered the relevant money judgments. In response, James argues the divorce decree was "the judgment" referenced in I.C. § 28-22-104(2); thus,

5

because James sold Amy's shares after the entry of the divorce decree, Amy's money was "money due on the judgment" pursuant to I.C. § 28-22-104(2) and Amy can only receive post-judgment interest from the sale.[1]

**A.     Idaho Code § 28-22-104(2) Does Not Preclude Multiple Judgments in a Case**

Idaho Code § 28-22-104 prescribes the application and legal rates of pre- and post-judgment interest. In the relevant portions, the statute provides:

> (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
>
> . . . .
>
> > 2.   Money after the same becomes due.
>
> . . . .
>
> (2) The legal rate of interest on money due on the judgment of any competent court or tribunal shall be the rate of five percent (5%) plus the base rate in effect at the time of entry of *the judgment*.

(Emphasis added.)

We must first decide whether "the judgment" as referenced in subsection (2) refers to a singular judgment in a proceeding. As with all statutory interpretation questions, we begin with the plain language of the statute, keeping in mind that we will not construe a statute to mean something it does not say. *Gregory v. Stallings*, 167 Idaho 123, 130, 468 P.2d 253, 260 (2020).

The plain language of I.C. § 28-22-104(2) does not indicate that the words "the judgment" in I.C. § 28-22-104(2) must refer to a single judgment in a particular case. Idaho Rule of Civil Procedure 54(a)(1) defines a judgment as:

> "Judgment" as used in these rules means a separate document entitled "Judgment" or "Decree". A judgment must state the relief to which a party is entitled on one or more claims for relief in the action, which may include dismissal with or without prejudice. A judgment must not contain a recital of pleadings, the report of a master, the record of prior proceedings, the court's legal reasoning, findings of fact, or conclusions of law.

Under that same rule:

> A judgment is final if either it is a partial judgment that has been certified as final pursuant to subsection (b)(1) of this rule or judgment has been entered on all claims for relief, except costs and fees, asserted by or against all parties in the action.

Idaho Rule of Family Law Procedure 802 similarly defines a judgment:

---

[1]     The parties agree that after the magistrate court entered the 2017 and 2018 money judgments, post-judgment interest would accrue pursuant to Idaho Code § 28-22-104(2).

> *"Judgment" means a separate document entitled "Judgment" or "Decree".* A judgment must state the relief to which a party is entitled on one or more claims for relief in the action, which may include dismissal with or without prejudice. A judgment must not contain a recital of pleadings, the report of a master, the record of prior proceedings, the court's legal reasoning, findings of fact, or conclusions of law. A judgment is final if either it is a partial judgment that has been certified as final pursuant to subsection (b)(1) or judgment has been entered on all claims for relief, except costs and fees, asserted by or against all parties in the action. A judgment or partial judgment must begin with the words "JUDGMENT IS ENTERED AS FOLLOWS . . . ," and it must not contain any other wording between those words and the caption. A judgment may include any findings of fact or conclusions of law expressly required by statute, rule, or regulation.

Neither definition requires that in order for a document to be a judgment, it must be either the only judgment or the final judgment entered in the case. Accordingly, we conclude that the plain language of I.C. § 28-22-104(2) does not limit "the judgment" to a single judgment in a proceeding and, thus, the statute allows for the possibility of multiple judgments in a case.

The Idaho Supreme Court similarly concluded that I.C. § 28-22-104(2) allowed for multiple judgments in a proceeding in *Roesch v. Klemann*, 155 Idaho 175, 178, 307 P.3d 192, 195 (2013). There, the Court held "the judgment" language in subsection I.C. § 28-22-104(2) applied broadly to *all judgments* entered in a proceeding:

> [I.C. § 28-22-104(2)] provides that the defined rate "shall be" the rate applied to money due on a judgment and that it "shall operate" as the applicable rate for "all" judgments. Thus, the plain language of subsection (2) indicates that the mandatory interest rate on an amount due on *a* judgment is the rate provided in the statute, and further that the statutory rate applies to *all* judgments declared during the relevant time period.

*Id.* at 178, 307 P.3d at 195 (emphasis added).

Thus, a plain reading of I.C. § 28-22-104(2) does not preclude multiple judgments in a proceeding. This does not change because the issue arises in a family law context. *See Josephson v. Josephson*, 115 Idaho 1142, 1151, 772 P.2d 1236, 1245 (Ct. App. 1989) (holding "[a]lthough the date of the divorce decree is a benchmark for determining the value of property for equitable division, interest would only accrue on a money judgment setting forth the obligation to pay") *overruled on other grounds by Bell v. Bell*, 122 Idaho 520, 835 P.2d 1331 (Ct. App. 1992).

Here, however, the magistrate court found the divorce decree served as the "one true [j]udgment" in the proceeding. Specifically, the magistrate court cited *Worthington v. Thomas*, 134 Idaho 433, 4 P.3d 545 (2000) and found:

In this case, there is only one true "Judgment"--the divorce decree that was entered on October 29, 2015. All other subsequent documents titled "judgments" either amend the October 29, 2015 Judgment, modify the October 29, 2015 Judgment, enforce the Judgment that already exists (money judgment), or are more appropriately titled post-judgment orders.

In reaching this conclusion, the magistrate court did not recognize that I.C. § 28-22-104(2) does not preclude multiple judgments in a proceeding. *Worthington* does not change our interpretation of the statute.

In *Worthington*, Worthington and Thomas were divorced parents of minor children. *Worthington*, 134 Idaho at 434, 4 P.3d at 546. Thomas sought and received a judgment consolidating years of unpaid child support. The magistrate court entered a judgment, listing nearly $11,000.00 as the principal amount due. The judgment also stated that the amount Thomas owed "would accrue 'interest thereon from the date thereof at the judgment rate as provided by law.'" Worthington later moved to amend the judgment to include prejudgment interest on her award. The motion was not heard for seven years, and then following a hearing, the magistrate court denied the motion. Worthington appealed. *Id*.

On appeal, the Idaho Supreme Court held that, pursuant to *Hunsaker v. Hunsaker*, 117 Idaho 192, 786 P.2d 583 (Ct. App. 1990), child support payments are self-executing judgments. *Worthington*, 134 Idaho at 435, 4 P.3d at 547. Therefore, there was no reason to enter a separate judgment on the past due principal for interest to accrue. *Id.* Instead, to collect, the payee may obtain a writ of execution based upon an affidavit which sets forth a calculation of interest and the principal amount due under the judgment. *Id.* However, the Court held once the amount was consolidated into a single judgment, any claim to interest that Worthington had was merged into the consolidated judgment. *Id*. at 436, 4 P.3d at 548. The Court further held that because Worthington waited seven years to pursue her claim, res judicata precluded Worthington from collecting prejudgment interest. *Id*. at 437, 4 P.3d at 549. The Court did not explicitly or implicitly hold that the only judgment in the proceeding was the divorce decree.[2]

---

[2] The dissent disagreed that the magistrate court entered a final judgment when it issued the consolidated judgment, reasoning that "the only true judgment entered in this case" was on the date the decree was entered when Thomas was ordered to pay child support. *Worthington*, 134 Idaho at 438, 4 P.3d at 550 (Walters, J. dissenting). Based on this "true judgment" rationale, the dissent concluded any judgment entered after that should have been entitled a "post-judgment order." *Id.* The dissent, however, is not binding authority.

8

The plain language "the judgment" in I.C. § 28-22-104(2) is not limiting language and does not preclude multiple judgments in a proceeding. It is undisputed that the divorce decree was *a* judgment in this case. However, the 2017 and 2018 money judgments were also judgments because they met the requirements of I.R.C.P. 54(c) and I.R.F.L.P. 802. Each of the 2017 and 2018 money judgments were entitled "money judgment," began with the relevant language, and stated the relief granted by containing a valuation of Amy's shares reduced to a specific, monetary amount. Further, neither money judgment contained a recitation of pleadings, findings of fact, or conclusions of law. As such, the divorce decree, the 2017 money judgment, and the 2018 money judgment were all judgments for purposes of applying I.C. § 28-22-104. Consequently, the district court erred in affirming the magistrate court's conclusion that the divorce decree served as the "one true [j]udgment" in this case.

**B.**     **The 2017 and 2018 Money Judgments Were the Relevant Judgments for Purposes of Imposing Interest**

Because the divorce decree and the 2017 and 2018 money judgments were all judgments, the next question is which were "the judgment(s)" contemplated by I.C. § 28-22-104(2). If the divorce decree served as the judgment, then Amy may only receive post-judgment interest on James' sale of her Redtop Holding shares because James initiated the sale after the decree was entered and the proceeds of the sale would be "money due on the judgment" pursuant to I.C. § 28-22-104(2). However, if the 2017 and 2018 money judgments were the relevant judgments for purposes of determining interest, the proceeds of the sale were "[m]oney after the same became due" pursuant to I.C. § 28-22-104(1) because the sale occurred prior to the entry of judgment and Amy may receive prejudgment interest from the date James received the money until the entry of the money judgments.

The magistrate court concluded that the interest rate should be set at the post-judgment rate pursuant to I.C. § 28-22-104(2) based, in part, on its conclusion that Idaho courts have generally held that post-judgment interest applies to family law judgments where some money is due at a future date. As support for this decision, the magistrate court cited *Worthington*, *Hunsaker*, and *Krebs v. Krebs*, 114 Idaho 571, 759 P.2d 77 (Ct. App. 1988). However, none of these cases hold that the divorce decree is necessarily "the judgment" for purposes of determining interest. Rather, those cases involved judgments containing a readily ascertainable money value, which happened to be the divorce decree. *See Worthington*, 134 Idaho at 438, 4 P.3d at 550 (unpaid child support where property settlement agreement ordered father to pay $115.00 per child per month);

9

*Hunsaker*, 117 Idaho at 193, 786 P.2d at 584 (application of interest to accumulation of unpaid child support obligations ordered in divorce decree); *Krebs*, 114 Idaho at 572-73, 759 P.2d at 78-79 (awarding interest on property discrepancy settlement award of $22,898.00). Further, in both *Worthington* and *Hunsaker*, the missed child support payments at issue served as self-executing judgments; consequently, there was no reason to enter a separate judgment on the past due principal for interest to accrue. *Worthington*, 134 Idaho at 435, 4 P.3d at 547; *Hunsaker*, 117 Idaho at 194-95, 786 P.2d at 585-86.

Thus, in *Worthington*, *Hunsaker*, and *Krebs* the relevant judgment in each case contained a specific monetary amount. This is an important factor for two reasons. First, it allowed the aggrieved party to redress her grievance by using the monetary amount specified in the original judgment to readily ascertain the value of her claim. Second, it provided a readily ascertainable amount to which interest could be applied. However, in circumstances where the judgment only allocates an asset without a readily ascertainable monetary value, the original judgment provides no such starting point. Instead, the trial court must adjudicate the valuation wholly from outside sources and the aggrieved party cannot seek recompense without this subsequent valuation and judgment from a trial court. *See AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 371, 483 P.3d 415, 428 (2021) (holding "[p]rejudgment interest can [only] be awarded as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation"); *see also Ross v. Ross*, 145 Idaho 274, 276, 178 P.3d 639, 641 (Ct. App. 2007) ("[A] person who could not determine the amount owed should not be charged interest on the sum that is ultimately found to be due.").

Unlike *Worthington*, *Hunsaker*, and *Krebs*, here the divorce decree only allocated an asset with no readily ascertainable value. In order for Amy to enforce the divorce decree, she needed the magistrate court's valuation of the asset and a money judgment. Accordingly, we do not find these cases persuasive.

The magistrate court also relied on *Swope v. Swope*, 122 Idaho 296, 834 P.2d 298 (1992) (*Swope II*). While the facts in *Swope* are similar to the facts here, the issue raised is not. *Swope II*, in part, concerned an award of bonds to the wife; the husband retained and controlled the bonds for approximately five years after entry of the divorce decree. *Id.* at 298, 834 P.2d at 300. What is unclear from either the first appeal, *Swope v. Swope*, 112 Idaho 974, 739 P.2d 273 (1987), or the second appeal, *Swope II*, is whether the bonds were associated with a specific monetary amount.

10

What is clear, however, is that the wife sought an award of post-judgment interest, specifically pursuant to I.C. § 28-22-104(2), earned on the bonds during the time the husband retained the bonds after the divorce decree was entered. *Swope II*, 122 Idaho at 301-02, 834 P.2d at 303-04. The request that interest be awarded specifically pursuant to I.C. § 28-22-104(2) was likely because under the version of the statute at that time, post-judgment interest was six percent higher than the rate for prejudgment interest. *See Swope II*, 122 Idaho at 298, 834 P.2d at 300. The magistrate court denied the wife's request and granted the wife an interest rate equal to the actual investment yield of the bonds. *Id*. at 301, 834 P.2d at 303. The district court reversed the magistrate court. *Id*. The Idaho Supreme Court simply adopted the district court's reasoning as follows:

> The starting point for resolution of this issue is the applicable statute [I.C. § 28-22-104]. The statutory rate applies to money due on judgments. Here, *[wife] was denied the cash payment of the interest on the asset awarded in the decree. This cash payment can be viewed as money due on the judgment.* It is held that the appropriate rate is, therefore, the statutory judgment rate.

*Id*. at 302, 834 P.2d at 304. Thus, the Court found the district court did not err in awarding the wife the higher rate of interest listed in I.C. § 28-22-104(2). *Id*. Accordingly, *Swope II* does not stand for the proposition that the words "the judgment" in I.C. § 28-22-104(2) is synonymous with the divorce decree as a final judgment without regard to the nature of the asset at issue.

The above opinions are consistent with the equitable considerations that underlie family law cases, *see Badell v. Badell*, 122 Idaho 442, 446, 835 P.2d 677, 681 (Ct. App. 1992) (holding principles of equity generally govern marriage dissolution), and the award of prejudgment interest itself. *See Chenery v. Agri-Lines Corp.*, 115 Idaho 281, 289, 766 P.2d 751, 759 (1988) (holding "[i]n the area of prejudgment interest, equitable principles are emphasized"). If the relevant judgment for purposes of I.C. § 28-22-104(2) is always the divorce decree, then prejudgment interest cannot apply to claims that, for equitable reasons, should be awarded prejudgment interest. For example, had Amy successfully pursued a tort claim for conversion or breach of a fiduciary duty outside of the family law proceeding, she would have been eligible to receive prejudgment interest prior to the entry of the money judgment and she would be entitled to post-judgment interest thereafter. *See Schenk v. Smith*, 117 Idaho 999, 1001, 793 P.2d 231, 233 (Ct. App. 1990) (recognizing that in "conversion cases, the equities lie with parties who have been deprived of the use of their money or property during the pendency of their claims," and tort claims for conversion of property may receive prejudgment interest). Reading the statute narrowly such that "the

11

judgment" refers only to the divorce decree excludes parties in family law cases from obtaining prejudgment interest in a case, like this one, where fraudulent behavior occurs after the entry of the divorce decree, but before the entry of a judgment upon which the aggrieved party can execute. This is because prejudgment interest is only allowed where a claim is liquidated, where the amount due can be ascertained by mathematical computation, or where the amount due can be determined by reference to a recognized standard. *Id.* at 1001, 793 P.2d at 233; *see also AgStar*, 168 Idaho at 372, 483 P.3d at 429. In light of all these considerations, we conclude "the judgment" referenced in I.C. § 28-22-104(2) is the judgment that contains a readily ascertainable monetary amount for the asset at issue.

In this case, only after the magistrate court entered the 2017 and 2018 monetary judgments were there judgments that contained a readily ascertainable monetary value for the asset at issue. Accordingly, the 2017 and 2018 money judgments are the relevant judgments for the purposes of I.C. § 28-22-104(2).

**C. Amy is Entitled to Prejudgment Interest Under I.C. § 28-22-104(1) From the Date James Received Money From the Sale of the Shares Until the Entry of the 2017 and 2018 Money Judgments**

Pursuant to I.C. § 28-22-104(1) prejudgment interest may be awarded on "[m]oney after the same becomes due." "The purpose of awarding prejudgment interest is to compensate an injured party for the time value of money." *AgStar*, 168 Idaho at 372, 483 P.3d at 429.

The district court affirmed the magistrate court's finding that Amy should be awarded interest from the date James sold Amy's Redtop Holding shares. However, because the magistrate court erroneously found the divorce decree was the relevant judgment for purposes of I.C. § 28-22-104(2), it did not consider that an award of prejudgment interest under I.C. § 28-22-104(1) was permissible. When the magistrate court weighed the facts and considered the equitable principles, it concluded that equitable reasons justified awarding Amy interest from the date James sold the shares and unlawfully retained the proceeds.[3] Because James' sale of Amy's shares occurred prior to the entry of the 2017 and 2018 money judgments, the sale triggered the application of I.C. § 28-

---

[3] In its determination that Amy was entitled to post-judgment interest pursuant to I.C. § 28-22-104(2), the magistrate court weighed the equitable considerations raised by the facts of the case. However, post-judgment interest is statutory, thus it accrues from entry of the relevant judgment regardless of the equitable considerations. *See Roesch v. Klemann*, 155 Idaho 175, 178, 307 P.3d 192, 195 (2013) ("[T]he plain language of subsection (2) indicates that the mandatory interest rate on an amount due on a judgment is the rate provided in the statute.").

22-104(1) and, thus, the money James owed Amy was "[m]oney after the same becomes due." As a result, Amy should be awarded prejudgment interest pursuant to I.C. § 28-22-104(1) from the date James received the funds from the sale of the shares until the date each money judgment was entered. As of the date the 2017 and 2018 money judgments were entered, Amy is entitled to post-judgment interest pursuant to I.C. § 28-22-104(2).

## D.     Attorney Fees and Costs

Amy seeks an award of attorney fees on appeal. An award of attorney fees may be granted under I.C. § 12-121 and Idaho Appellate Rule 41 to the prevailing party, and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. We do not find that James defended this appeal frivolously, as such we decline to award attorney fees on appeal. Costs are awarded to Amy pursuant to I.A.R. 40.

## IV.

## CONCLUSION

The plain language of I.C. § 28-22-104(2) does not limit "the judgment" to the final judgment in a case. Instead, it applies to all judgments entered in a case. In this case, the relevant judgments were the 2017 and 2018 money judgments because these judgments contained readily ascertainable monetary values for the assets at issue. Because James acquired the money prior to the entry of the 2017 and 2018 money judgments, Amy's share was "[m]oney when such becomes due" pursuant to I.C. § 28-22-104(1). The district court erred in affirming the magistrate court's order because the magistrate court erroneously applied I.C. § 28-22-104(2) instead of I.C. § 28-22-104(1) from the date James received the money until the entry of the money judgments. Accordingly, we reverse the district court's decision affirming the magistrate court, and remand the case for further proceedings consistent with this opinion. Amy is awarded costs but not attorney fees on appeal.

Judge GRATTON and Judge LORELLO **CONCUR**.

13