4 P.3d 545

K. Diane WORTHINGTON,
Plaintiff–Appellant,

v.

Larry F. THOMAS, Defendant–
Respondent.

No. 24807.

Supreme Court of Idaho,
Boise, December 1999 Term.

April 27, 2000.

Rehearing Denied July 12, 2000.

Alexanderson, Davis, Rainey & Whitney, Caldwell, for appellant. Ronald P. Rainey argued.

Robinson & Walker, PLLC, Caldwell, for respondent. Bryan K. Walker argued.

KIDWELL, Justice.

Diane Worthington appeals from the magistrate and district courts' determination that

interest on delinquent child-support payments should not be awarded when arrearages are consolidated into a final judgment. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On August 12, 1972, appellant Diane Worthington and respondent Larry Thomas were married. Three children were born of the marriage, which ended by divorce on August 4, 1982. The 1982 divorce decree incorporated the parties' settlement agreement for the disbursement of property and custody and support of the children. The settlement agreement gave Worthington custody of the children and provided that Thomas pay child support until the children reached the age of majority.

Due to changes in the actual physical custody of the children and disputes arising from prior agreements of the parties, Thomas filed a motion to modify and consolidate any past owing child support.[1] A trial was held on December 20 and 22, 1989. The magistrate court entered findings of fact and conclusions of law on March 6, 1990.

The magistrate court found that as of December 20, 1989, Thomas owed Worthington $10,611.67, "as a principal balance of accrued but unpaid child support." In this action to consolidate past owing support into one judgment, the magistrate found that interest should be applied at the statutory rate on "all sums applicable to this case."

The court ordered Thomas's counsel to prepare "an appropriate judgment based upon the above Findings of Fact and Conclusions of Law." Thomas's counsel complied,

and on May 15, 1990 the magistrate entered a judgment which stated that amounts owed to Worthington from Thomas for past child support would accrue "interest thereon from the date thereof at the judgment rate as provided by law."

On May 29, 1990, Worthington moved the magistrate to amend the judgment to include pre-judgment interest on her award, thus allowing her to collect interest on each of the monthly amounts due prior to the December 1989 hearing. The motion was not heard by the magistrate court for nearly seven years.[2]

On March 27, 1997, the magistrate held a hearing on Worthington's motion to amend the judgment. While the majority of the hearing was continued until June, the magistrate rendered an order from the hearing, that "child support payments draw interest from the date they each individually come due."

On June 26, 1997, the magistrate court again took up the motion to amend the May 16, 1990 judgment. During that hearing, the magistrate pointed out that Worthington was not entitled to interest on accrued child support prior to December 1989 because she had failed to prove the amount she was entitled to at the 1989 hearing. In a subsequent written order, the magistrate confirmed that Worthington was only entitled to interest on accrued child support from the 1990 judgment forward and not for any time prior to that.

In an order resulting from a hearing on June 26, 1997, the magistrate denied Worthington's motion for a writ of execution. Worthington had sought the writ to collect the interest on payments due prior to the December 1989 hearing.[3]

---

1. In December of 1989, the magistrate court held a hearing to determine the amount of principal child support owed to Worthington from the date of divorce in 1982 until December 1989. In May 1990, the magistrate court entered a judgment regarding the 1989 hearing. The parties refer to the amount of interest Worthington is claiming as pre-judgment interest because it arose prior to the 1990 judgment of the 1989 hearing. However, they also refer to the *same* interest as post-judgment interest because when each child support payment becomes due, it begins to accrue statutory interest as judgment interest. Thus, the

interest is pre 1990 but also post due-date of payment, yet it is all one and the same interest. Interest on amounts after 1990 (true post-judgment interest) is not at issue in this case.

2. The district court found that Worthington had noticed her motion to amend for June 7, 1990. However, no support for this finding is found in the record.

3. The record does not contain Worthington's motion for the writ of execution.

Worthington appealed the magistrate's decision that she was not entitled to a writ of execution nor to any interest prior to December 1989. The appeal was heard by the district court, which issued its written decision on May 19, 1998. The district court held that because Worthington had failed to present evidence of the amount of interest owed to her prior to the 1989 hearing, she was barred from collecting under the doctrine of res judicata. Thus, Worthington could execute on the 1990 judgment for post-judgment interest (from 1990 forward) but not for pre-judgment interest (anything before the 1990 judgment).

Worthington appeals from both the magistrate and district courts' decisions.

## II.

### STANDARD OF REVIEW

When this Court reviews a case appealed from a district court's appellate review of a magistrate's decision, this Court will review the decision of the magistrate court, independently of, but with due regard for, the decision of the district court. *In Re Estate of Kirk*, 127 Idaho 817, 822–23, 907 P.2d 794, 799–800 (1995). Where the magistrate court's findings of fact are supported by substantial and competent evidence, even if the evidence is conflicting, the magistrate's decision will not be disturbed on appeal. *Stonecipher v. Stonecipher*, 131 Idaho 731, 734, 963 P.2d 1168, 1171 (1998). However, this Court freely reviews issues of law. *Id.*

## III.

### ANALYSIS

**A. A Writ of Execution Can be Used for Collecting Accrued Interest On Past–Due Child Support Payments.**

Worthington claims that the district court erred when it denied her writ of execution for the interest which was due her prior to the December 1989 judgment. In support of her claim, Worthington cites the Court of Appeals case of *Hunsaker v. Hunsaker*, 117 Idaho 192, 194, 786 P.2d 583, 585 (Ct.App. 1990).

In *Hunsaker*, the delinquent payor argued to the Court of Appeals that in order to accrue statutory interest each past due child support payment must first be reduced to a judgment. *Hunsaker*, 117 Idaho at 194, 786 P.2d at 585. After considering cases from this Court and Idaho Code statutes, the Court of Appeals determined that "interest accrues at the judgment rate from the due date on delinquent child support installments." *Id.* The Court of Appeals then explained the proper procedure for a payee to collect judgment interest on past due child support payments.

The court noted that, "Although each support installment acquires the status of judgment when it comes due, it would be unwise to place a burden on court clerks to compute daily interest on every child support payment." *Id.* The court continued that, "The better approach, in our view is for court clerks simply to maintain records of support payments due and payments received." *Id.* The correct procedure for collecting interest on support payments, reasoned the court, is for the payee to "seek and obtain from the court a writ of execution based upon an affidavit which sets forth a calculation of interest include[ing] the amount due under the judgment." *Id.* at 194–95, 786 P.2d at 585–86 (internal citations omitted).

In the present case, there is no dispute as to the holding of *Hunsaker*. Both of the parties, the magistrate court, and the district court agree that once child support payments become due and owing, interest at the statutory rate begins to accrue. Therefore, it was not necessary to reduce the past owing child support payments to a judgment in order for judgment interest to begin accruing. However, in the present case we are faced with a situation where the past due child support payments were consolidated into a single judgment.

Worthington claims that, even though the payments were consolidated into a single judgment, she should still be able to collect interest on the delinquent payments through a writ of execution.

In *Davis v. Davis*, 114 Idaho 170, 755 P.2d 3 (Ct.App.1988), the Court of Appeals consid-

ered a similar issue. In *Davis*, after the magistrate court determined that the payor was delinquent, the parties entered into "a stipulation providing the manner in which future support payments would be made and the delinquency would be discharged." *Davis*, 114 Idaho at 171, 755 P.2d at 4. Two years after the stipulation had been incorporated into a judgment, the payee sought to modify the judgment to include judgment interest on the delinquent payments which had been incorporated into the judgment. *Id.* When the magistrate court declined to modify the judgment, the payee appealed to the district court. *Id.* at 172, 755 P.2d at 5. When the district court dismissed the appeal on procedural grounds, the payee appealed.

The case was heard by the Court of Appeals which held that "all such obligations, and any interest that might have accrued thereon, were merged into the magistrate's order adjudicating the amount of the delinquency in June 1984, and prescribing the manner in which it would be paid." *Id.* In both the present case and *Davis*, the parties had the opportunity to raise the issue of interest prior to the entering of the magistrate's order. In both cases, the parties attended, and were represented by counsel, at evidentiary hearings on the amount of the arrearages. The parties all had the full and fair opportunity to raise the issue of interest prior to the entering of the magistrate's order.

■ Therefore, we hold that, like *Davis*, when the magistrate court consolidated the past due support obligations into a single judgment, any claim to interest Worthington had was merged into the consolidated judgment. While Worthington properly sought to modify the judgment of the magistrate court to include interest, for the reasons stated below we hold that she is now barred from collecting.

## B. The Rule of Res Judicata Can be Applied to Bar the Procedural Matter of Post–Judgment Interest.

■ Worthington argues that interest on delinquent child support payments is post-judgment interest because the Court of Appeals held that once a support installment becomes due it becomes a judgment. *Hunsaker*, 117 Idaho at 194, 786 P.2d at 585. She further asserts that since post-judgment interest is a procedural matter, the doctrine of res judicata cannot be applied.

In this argument, Worthington attempts to convince this Court that the doctrine of res judicata is being applied to the post-judgment interest itself, thus depriving her of post-judgment interest she is entitled to. However, actually, Worthington's claim to interest on the delinquent child support has never been adjudicated because she failed to raise it to the magistrate court.

Worthington cites the case of *State, Bureau of Child Support v. Knowles*, 128 Idaho 835, 837–38, 919 P.2d 1036, 1038–39 (Ct.App. 1996), for the proposition that res judicata "prevent[s] litigation of causes of action." While this quote does come from *Knowles*, a closer look at the context of the quote is necessary.

*Knowles* was trying to use res judicata as a defense to a paternity action, claiming that the issue of paternity was fully litigated in the divorce action fourteen years earlier. *Id.* The magistrate denied Knowles's motion to dismiss because it found the doctrine of res judicata did not apply. *Id.* The Court of Appeals affirmed the magistrate on the basis that the parties to the divorce decree were not the same parties to the present action. *Id.* In explaining the rationale behind the doctrine of res judicata, the Court of Appeals stated that "res judicata prevents litigants *who were parties in a prior action and those in privity with them* from bringing or having to defend a claim arising from the transaction or series of transactions giving rise to the first suit." *Id.* (emphasis in original).

In the present case, Worthington had the opportunity, and in fact under *Hunsaker* was required, to raise the issue of interest to the magistrate court. Worthington failed to raise the issue and thus it was not decided by the magistrate court. Therefore, res judicata is not being applied to a previously established legal right to interest, but to an issue that should have been brought at the magistrate's hearing on the delinquent payments.

**C. Because Worthington Failed to Pursue Her Motion To Modify, Res Judicata Bars Her Collection of Interest on Past–Due Child Support Payments.**

■ Worthington claims that res judicata cannot be applied because the judgment of the magistrate is not final. The judgment cannot be final, she reasons, because her motion to amend tolls the time for appeal until the motion is ruled upon. This Court has held that I.R.C.P. 59(e) "does destroy the finality of a judgment for purposes of appeal, and the full time for appeal commences to run anew from the entry of an order disposing of the motion and restoring finality." *First Sec. Bank v. Neibaur*, 98 Idaho 598, 603, 570 P.2d 276, 281 (1977); *State v. Goodrich*, 104 Idaho 469, 471, 660 P.2d 934, 936 (1983).

However, in the present case we determine that the magistrate's judgment was final because Worthington's seven year delay in prosecuting her motion to modify the judgment was an unreasonable delay. Worthington filed her motion to amend judgment, presumably under I.R.C.P. 59(e), on May 29, 1990, thirteen days after the magistrate entered judgment. As previously noted, the district court found that Worthington had noticed up her motion for June 7, 1990, and again on May 18, 1997. Nothing in the record supports those findings. There is also nothing in the record to explain why the motion was not heard for seven years. During that time, Worthington changed counsel three times, and she and Thomas were in court several times wrangling over other issues. It thus appears that the issue of amending the judgment to include interest was not a priority and somewhere over the years was abandoned.

While Worthington is correct in her assertion that her motion to amend tolls the finality of the judgment, fairness and equity do not allow her to completely destroy the finality of the judgment by failing to pursue her motion. In considering other rules of civil procedure, this Court has held that "unreasonable delay creates a presumption of prejudice to the defendant's case." *Ellis v. Twin Falls Canal Co.*, 109 Idaho 910, 912, 712 P.2d 611, 613 (1985). Similarly, when a plaintiff sought a motion for continuance after three years of not prosecuting the claim, this Court ruled that "it is consonant with sound reason that a plaintiff who hails a defendant into court assumes, and, so long as he has the affirmative of the main issue, retains the duty of diligent prosecution." *Hansen v. Firebaugh*, 87 Idaho 202, 209, 392 P.2d 202, 206 (1964).

While this Court is not going to set a specific time at which an unreasonable delay in prosecuting a motion to modify will fail to destroy the finality of a judgment, we hold that in the present case Worthington's seven year delay is too long.

**D. The Magistrate Court Did Not Err in Allowing Post–Judgment Interest to Accrue on a Consolidated Judgment that Included Pre–Judgment Interest.**

■ Worthington is essentially arguing that *Davis* must be overruled because a party may not be awarded both pre-judgment and post-judgment interest on the same claim. This conclusion however, misstates Idaho law.

I.C. § 28–22–104(2) provides that post-judgment interest is available at the "legal rate of interest on money due on the judgment of any competent court or tribunal." *Id.* This Court has held that "interest is automatically allowed on judgments and is allowed at the statutory rate." *Chenoweth v. Sanger*, 123 Idaho 189, 191, 846 P.2d 191, 193 (1993). Since post-judgment interest is automatically allowed on all judgments, Worthington's argument would preclude pre-judgment interest altogether. This Court routinely allows pre-judgment interest "where the amount of liability is liquidated or capable of ascertainment by a mere mathematical calculation." *Doolittle v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 805, 814, 919 P.2d 334, 343 (1996). This Court will continue to follow its longstanding tradition of allowing, in appropriate circumstances, both pre-judgment and post-judgment interest.

**IV.**

**CONCLUSION**

Worthington was required to establish the amount of judgment interest she was entitled

to at the magistrate's hearing to consolidate the delinquent obligations. Because Worthington abandoned her motion to modify the magistrate court's order, we hold that the doctrine of res judicata bars her from raising the issue now. No attorney fees are awarded on appeal. Costs are awarded to respondent.

Chief Justice TROUT and Justice SCHROEDER concur.

Justice WALTERS, dissenting.

I cannot agree with the analysis or conclusion reached by the majority opinion. In my view, the opinion incorrectly denies the plaintiff, Mrs. Worthington, a right that has been accorded to her by the legislature of the State of Idaho. It is the right, set by a statute reflecting public policy, to the collection of interest on the past-due child support obligation owed to her by her former husband, Mr. Thomas, for the support of their children.

At the outset, I disagree that the magistrate entered a "final judgment" in 1990 when the arrearages in support were set forth in a consolidated amount. To so characterize the magistrate's determination is to elevate form over substance. The only true judgment entered in this case was on August 4, 1982, when pursuant to a property settlement agreement between the parties, the defendant Thomas was ordered to pay the sum of $115 per child per month for each of the three children of the parties commencing on May 15, 1982. This obligation was to terminate as to each of the children when he or she respectively reached the age of majority or married. In the context of child support cases, this was a judgment in installments. *Simonton v. Simonton*, 33 Idaho 255, 193 P. 386 (1920). Furthermore, it is well settled that the statutory interest rate on judgments is applicable to delinquent sup-

port payments when each periodic payment comes due. *Strand v. Despain*, 79 Idaho 304, 316 P.2d 262 (1957). It is clear that the right to interest on past-due child support installments arises not as a matter of adjudication from the courts, but rather as a matter of statutory right and is set at the rate established by the legislature, I.C. § 28–22–104(2). It is an automatic result of the judgment as a matter of policy set by statute, not of judicial grace.

It appears to me that the magistrate created confusion in this case when, following the hearing in December 1989 concerning the delinquencies of Mr. Thomas in the payment of his child support installments, the magistrate entered a "judgment" for the principal amount of the delinquencies. It was not necessary that a new judgment be created. The magistrate should have merely entered a "post-judgment order" setting the accumulated amount due, rather than a "judgment" when there already was an installment judgment in the file since 1982. In other words, there was no need to enter another judgment in the same case. Moreover, the installment judgment, as noted above, should have carried with it a calculation of the statutory interest due on the outstanding installments. Because this calculation reflects the statutory right to interest, it should have been done by the magistrate automatically in the 1989 proceeding and without any request therefor from Mrs. Worthington.

The obvious reason for entering an order reflecting the accumulation of delinquent child support installments is to obtain a writ of execution to collect the delinquencies through seizure by the sheriff of the defendant's assets.[4] Such a writ does not depend upon the entry of a new "judgment" but utilizes only a post-judgment order setting the amount then due (including accrued interest on each installment). This is the pro-

---

4. The majority opinion seems to attach some significance to whether the record contains Mrs. Worthington's "motion" for a writ of execution. *See footnote 3, supra.* However, there is in the record Mrs. Worthington's "affidavit of amount due," which was submitted to obtain the issuance of a writ of execution. This document, as well as the writ of execution, is included in the record as a result of this Court's order for aug-

mentation of the record, dated December 2, 1998. The affidavit requesting a writ of execution essentially serves as a "motion." At any rate, the writ of execution was issued, and if there is something missing from the record, the absent item is deemed to support the writ as issued. *See Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980).

cess explained by the Court of Appeals in *Hunsaker v. Hunsaker*, 117 Idaho 192, 786 P.2d 583 (Ct.App.1990), discussed *infra*.

An exception to this process may exist as a result of the Court of Appeals' opinion in *Davis v. Davis*, 114 Idaho 170, 755 P.2d 3 (Ct.App.1988), decided two years before *Hunsaker*. However, the *Davis* case is completely distinguishable from the instant case. In *Davis*, there was a dispute over the arrearage of child support owed by Mr. Davis to Mrs. Davis due to credits claimed by Mr. Davis. At the conclusion of an evidentiary hearing before a magistrate, the parties negotiated through their respective counsel a stipulation providing the manner in which future child support payments would be made and the delinquency would be discharged. The magistrate entered an order holding Mr. Davis liable for the delinquency and incorporating the terms of the stipulation with regard to the payment. Two years later during a proceeding brought by Mr. Davis concerning the custody and visitation rights with the children, Mrs. Davis filed an affidavit claiming that when the support arrearages had been determined and the stipulation executed she had been unaware of an entitlement to interest on each of the overdue monthly support payments. She asked the magistrate to modify the support order to include the interest in the approximate amount of $2000. At the conclusion of that proceeding, the magistrate resolved the custody issues but failed to make any award of interest on the child support arrearages. Mrs. Davis appealed but a district judge dismissed the appeal on procedural grounds without reaching the merits of the issues raised by Mrs. Davis. Mrs. Davis then appealed from the district court's determination and the case was assigned to the Idaho Court of Appeals.

The Court of Appeals disagreed with the district judge's decision to dismiss the appeal but nevertheless upheld the dismissal of the appeal by the district court after reviewing the merits of the claims raised by Mrs. Davis with regard to the action taken by the magistrate. Insofar as the question of interest on the child support arrearage, the Court of Appeals held:

The first such issue is whether she is entitled to modification of the June, 1984, order fixing the support arrearage and prescribing the manner in which it will be paid. As noted above, [Mrs. Davis] contends that she was unaware of her entitlement to interest on each monthly support obligation as it matured and went unpaid. However, all such obligations, and any interest that might have accrued thereon, were merged into the magistrate's order adjudicating the amount of the delinquency in June 1984, and prescribing the manner in which it would be paid. The order was based primarily upon a stipulation of the parties, resolving their dispute over the existence and amount of the arrearage.

114 Idaho at 172, 755 P.2d at 5.

It is clear that *Davis* stands for the proposition that when a party agrees to accept a fixed sum amount as a total due for a series of delinquent child support installments, that party cannot later seek an increase by including a calculation of interest which otherwise would be due on all or part of the installments, but for the agreement. Thus, *Davis* seems to be an exception to the rule of automatic inclusion of accrued interest on judgments set forth in installments expressed by this Court in *Strand v. Despain*, but it is dependent entirely upon a stipulation of the parties. One rationale for this conclusion may be that because the parties disagreed as to the amount of delinquent installments, their disagreement must have encompassed also any automatically attached amounts of interest and, by forgoing a determination by the court of the amount of the delinquent installments (and accumulated interest on each installment), the parties will have been deemed to have taken the interest factor into account in arriving at the amount of their agreed settlement. Another important factor may be that in *Davis* the husband likely commenced making the payments consistent with the stipulation and was entitled to the benefit of the bargain; otherwise the opinion by the Court of Appeals probably would have mentioned his continued defalcation, if it existed, as bearing on whether Mr. Davis' petition to modify custody and visitation would be entertained. Here, the defen-

dant, Mr. Thomas, continued to be delinquent in his support obligation and made no attempt to take advantage of the erroneous amount set by the magistrate when the 1990 "judgment" was entered.

The Court of Appeals' subsequent decision in *Hunsaker* is helpful in resolving the issues in this case. As in *Davis, Hunsaker* involved an action for the recovery of delinquent child support payments. However, the parties did not terminate the dispute by a negotiated settlement as was done in *Davis*. Instead, the magistrate was given the responsibility of determining the amount of the outstanding obligation. Reviewing the case on appeal, the Court of Appeals held

> [I]n this case, where both parties are seeking an adjudication from the court, the judge should make his own finding of the amount due. . . . The magistrate should determine from the evidence what delinquency exists and what amount of interest properly has accrued on the delinquent support payments after they came due.

117 Idaho at 193–94, 786 P.2d at 584–85. The Court of Appeals went on to explain the status of the delinquent installments and how to effect a collection of the amount due, together with the statutory interest. The Court said:

> Furthermore, Larry argues that each delinquent payment must be subject to a judgment separate from the original support order or decree, before interest can accrue. This argument disregards the existing status of unpaid support installments as judgments. Larry's argument does raise an issue of judicial administration upon which a comment is appropriate. Although each support installment acquires the status of judgment when it comes due, it would be unwise to place a burden upon court clerks to compute daily interest on every child support payment – deducting that amount from each payment received after the due date, and crediting only the remainder against the payor's support obligation. The better approach in our view, is for court clerks simply to maintain records of support payments due and payments received. If a payee of support wishes to collect interest accrued on a

support obligation, due to late payment of support, that party may seek and obtain from the court a writ of execution based upon an affidavit which sets forth a calculation of interest included in "the amount due under the judgment." I.R.C.P. 69. Although the procedure will require the courts to examine claims for interest in some cases, a parallel requirement already exists with respect to interest on other types of civil judgments. In any event, this procedure will alleviate the greater problem of burdening court clerks with automatic computations and deductions of interest in all cases – many of which likely would involve *de minimis* amounts that would not otherwise generate claims by payees. In the present case, of course, such a claim has been made and is contested. *The magistrate, on remand, should determine not only the principal amount of the delinquent support but also the interest which properly has accrued upon that delinquency.*

117 Idaho at 194–195, 786 P.2d at 585–86 (emphasis supplied).

At this point, I submit that the magistrate below should have followed *Hunsaker* and should have entered a post-judgment order—not a new "judgment"—fixing the amount of the principal due as accrued delinquent child support payments and also the accumulated interest, calculated at the statutory rate upon each of the delinquent installments.

I have additional reasons for disagreement with the majority opinion in this case. The first relates to the alleged "delay" in considering Mrs. Worthington's efforts to have interest calculated on the support obligation. The majority measures this "delay" from the date when Mrs. Worthington's attorney timely filed a motion to amend the 1990 "judgment."

The record shows that, after the decree of divorce in 1982, Mr. Thomas failed to pay the monthly child support as ordered. The State of Idaho, through the attorney general and the county attorney's office, got involved in this case in an attempt to collect from Thomas the amount of AFDC funds advanced by the Department of Health and Welfare to Mrs. Worthington for support of the couple's

children. A motion was therefore brought to enforce the decree and to collect those sums. As a countermeasure, Mr. Thomas responded with a petition to enforce certain property distribution provisions of the decree. The record shows that after the hearing in December 1989 over the dispute between the parties concerning accounting for property divisions and child support, the magistrate entered findings of fact and conclusions of law determining "that as of December 20, 1989 the defendant owed the plaintiff as and for child support the principal sum of $7,367.48." The magistrate directed the defendant's then attorney, Mr. Eismann, to prepare a "judgment." (As noted above, this directive should have required a "post-judgment order," not a "judgment," and if the magistrate had also calculated and added in the interest due on the accrued installments pursuant to the statute, as I submit he should have done, this case would not be undergoing its review today.) The determined amount of $7,367.48 appears in the "judgment" entered by the magistrate and filed on May 16, 1990, with the additional statement "plus interest thereon from the date hereof at the judgment rate as provided by law," even though the delinquent installments already were subject to interest under I.C. § 28–22–104(2).

On May 29, 1990, Dennis Sallaz, then the attorney for Mrs. Worthington, filed a motion to amend the "judgment" by

> amending paragraph 4 of the Judgment After Entry of Findings of Fact and Conclusions of Law entered herein on May 15,

1990 to correct the error in said paragraph in that said paragraph does not provide for interest on each past due child support payment at the rate of 12% per annum from the due date there [sic] thereof, as set forth and determined by the Court's Findings of Fact and Conclusions of Law and Order dated February 26, 1990.

Mr. Sallaz later withdrew from representation of the plaintiff without noticing the motion to amend for hearing, and attorney Greg Lovan entered an appearance for Mrs. Worthington.

We then go forward in time to July of 1995 when Ron Rainey appeared as the attorney for Mrs. Worthington to replace Greg Lovan, who had in the meantime withdrawn as counsel. The next reference to Sallaz' motion to amend judgment appears at page 127 of the Clerk's Record during a hearing on March 27, 1997.[5] The minute entry indicates that the court ordered the parties to get their documents to an accountant and get an accounting done, evidently for the purpose of determining the motion to amend judgment. At page 129 of the Clerk's Record, there appears an order reflecting the hearing of March 27, again referring to the plaintiff's motion to amend judgment. This document recites that, after having heard arguments on the motion,

> IT IS HEREBY ORDERED AND THIS DOES ORDER 1) This court deems that child support payments draw interest from the date they each individually be-

---

5. The majority opinion seems to fault Mrs. Worthington because of "Worthington's seven year delay in prosecuting her motion to modify the judgment," pointing out that during that time "Worthington changed counsel three times, and she and Thomas were in court several times wrangling over other issues. It appears that the issue of amending the judgment to include interest was not a priority and somewhere over the years was abandoned."

I submit that this is not an entirely accurate representation of the record. It fails to take note that during the same time period at least three other attorneys also appeared for Mr. Thomas as with Mrs. Worthington. It does not reveal that the "several" times in court consisted of, according to the minutes in the clerk's record, thirteen separate hearings before the magistrate concerning custody and support obligations with regard

to the children. The acrimony between these parties appears reflected by the following minute entry in 1995: "the court received a faxed letter from Mr. Rainey, counsel for the plaintiff, requesting that the trial be vacated and reset because his father had just passed away. Mr. Roberts [attorney for Mr. Thomas] objected to a continuance. The court ordered the trial vacated and reset."

It can hardly be said that Mrs. Worthington's continued efforts to get the magistrate to include the interest in the child support arrearages truly constituted an "abandonment" of her claim. Furthermore, the question of "abandonment" was never considered nor decided by the magistrate under the circumstances presented. Sallaz' motion to amend simply remained pending before the court, without being resolved until 1997.

come due at the statutory rate of interest on the date each installment becomes due. The order is signed by the magistrate on April 8, 1997, and was filed in the clerk's office on April 9, 1997. (It is readily apparent that the quoted language in the order fits any of the child support obligations since the original decree in 1982.)

At this point I would suggest that the April 9 order completely disposed of Mr. Sallaz' motion to amend the judgment. Notably, the record contains no indication that the defendant ever objected, on the grounds of untimeliness, to the magistrate's consideration of the Sallaz motion. Consequently, it is not necessary to discuss whether the motion was timely filed or timely heard by the magistrate. At any rate, by April 9, the motion had been heard and determined by the magistrate. Nothing remained to be done or to be decided further with regard to that motion. Thus, this motion plays no determinative role in our review of the decision by the magistrate from which the appeal was taken. My conclusion is supported by the next ensuing set of facts from the record.

This Court, by order of augmentation dated December 2, 1998, included a motion filed by Mr. Rainey on behalf of the plaintiff. This motion was filed on May 27, 1997, "to determine child support arrearage." This motion is supported by an affidavit by Mrs. Worthington and a ledger of support payments accrued and paid, together with a calculation of interest on each installment. The motion was noticed for hearing on the 5th day of June 1997. The minute entry of the magistrate's court dated June 5, 1997, discloses: "Mr. Rainey further noticed up a motion to determine arrearages and provided proof to the Court. However, [neither] the Court nor Mr. Walker had a copy of the motion. Upon agreement of counsel, the Court continued said motion to June 12, 1997 at 9:30 a.m. before this Court."

On June 12, 1997, the matter came before the magistrate upon Rainey's motion to determine child support arrearages. Mr. Rainey was granted a continuance of his motion over an objection by the defendant's then attorney, Mr. Walker. Because there was another motion filed by Walker scheduled for hearing on June 19 (evidently a motion to stay writ of execution), the court continued Mr. Rainey's motion to June 19 at 9:30 a.m. The minutes indicate that at that point the court would hear all issues at that time.

The minutes for the hearing on June 19, 1997, reflect that it was the time set for the motion to determine child support arrearages and the motion requesting a stay of execution. According to those minutes, however, the matter was then continued once again to June 26, 1997, at 9:30 a.m.

The motions were heard on June 26. Fortunately, we do not have to rely upon the court's minutes prepared by the deputy clerk for the magistrate in order to determine what happened at the hearing on June 26, 1997, because as part of the appellate record we have a transcript of the hearing held in front of the magistrate.

According to that transcript, the magistrate set the stage by saying: "basically, the issue is the validity – whether the 1990 judgment regarding child support is still valid at this point in time. Is that what it boils down to, does it not?" In response, Mr. Rainey replied, "I believe that is the case, your Honor."

Mr. Rainey then explained to the court that he was attempting to follow the procedure outlined by the Idaho Court of Appeals in *Hunsaker v. Hunsaker*, by presenting the court with the calculations that showed the interest due on each installment of the child support so that a writ of execution could be issued on the true outstanding amount. In the course of his argument to the magistrate, Mr. Rainey made what I believe is a very important observation regarding the motion by Mr. Sallaz to amend the judgment. Mr. Rainey said:

> This Court's judgment in 1990 specifically said it was principal – you're only calculating the principal. We brought – in fact, Mr. Sallaz filed a motion shortly thereafter to calculate interest, which we finally got [heard], I think, two or three months ago, and I think the court reaffirmed and signed an order that interest was intended but you were not going to calculate it.

That was the – part of the plaintiff's obligation to calculate it.

Transcript, page 7 line 24 through page 8 line 6.

This is a clear admission or concession by Mr. Rainey that the motion filed by Sallaz in 1990 had been completely disposed of months previously and was no longer before the court for consideration. The magistrate's decision on Mr. Rainey's motion, made from the bench at the conclusion of the hearing, also shows that the court was not concerned with deciding Sallaz' motion. The magistrate said (also addressing the defendant's arguments concerning the applicable statute of limitation, and the defendant's request for imposition of sanctions):

THE COURT: All right. All right, the – in the May 15th, 1990 order, which reflects the Court's findings of facts, conclusions of law that was entered at that point in time, this Court entered two separate – entered differing money judgments. As to things – and as to [paragraph] Number 4, it specifically ordered as follows: That of December 20th, 1989, the defendant owed the plaintiff as and for child support the principal sum of seven thousand, three hundred sixty-seven dollars and forty-eight cents ($7,367.48) plus interest from the date hereof at the judgment rate as provided by law.

It's obvious that in 1988 when [Idaho Code § ] 5–245 was enacted, that the legislature intended to create a specific category regarding child support, and a special provision regarding that basically making a twenty-three year statute of limitations if the child lived to the eighteenth birthday.

We went through trial. No accrued interest was proved at that point in time. Only principal was proved. And that was the reason there was a seven thousand, three hundred and sixty-seven dollar and forty-eight cents ($7,367.48) judgment.

The statute of limitations has not run as to that amount at this point in time and that is subject to execution. The amendments to the statute simply – basically, implement the earlier provisions in providing for the ability to collect that.

However, judgment interest only accrues from the December 20th, 1989 finding of this Court.

That then gets down to the motion for sanctions which basically I think both parties needed some instructions from the Court as to its position to know where they were coming – I did enter an order, Mr. Rainey, that interest accrues on each child support payment as it becomes due and owing. And that is as to the continuing – ones that are coming – have been coming due and owing on both sides at this point in time.

But back when they litigated this matter if they wanted a finding and a judgment entered for the total accrued amount, plus the interest, they needed to present proof. And so the only interest that's accruing on that seven thousand, three hundred and sixty-eight – sixty-seven dollars and forty-eight cents ($7,367.48) is judgment interest since December 20th of 1989.

MR. RAINEY: Your Honor, did the Court find the motion of Mr. Sallaz, to add that in? That's actually been pending all this time until I – and that's the motion we brought for hearing this spring.

THE COURT: The only issue I ruled on that point in time was – consistent with my position was, is that interest accrues on each child support obligation as it becomes due and owing. No proof was presented at the last hearing on that. The – the December '89 hearing. And so the only amount I am awarding her is the seven thousand, three hundred and sixty-seven dollars and forty-eight cents ($7,367.48) plus accrued interest from that date. Which is judgment interest. From the date of the December 20th hearing. So, she's entitled to the interest from that time.

So, if you'll prepare an order to that effect, Mr. Rainey.

Transcript, page 12, line 4 through page 14, line 11.

The written order was filed on September 19, 1997, referencing the hearing on June 26, 1997, on Mrs. Worthington's motion to establish child support arrearage. It is from this order that the appeal to the district court

was taken on October 24, 1997. That order makes no mention of Mr. Sallaz' motion to amend judgment – it does not grant the motion or deny the motion but addresses only Mr. Rainey's motion to establish child support arrearage and simply holds that "this Court hereby finds that as of December 20, 1989 the defendant owed the plaintiff for past due child support, the principal sum of $7,367.48, plus statutory interest thereof from the date of December 20, 1989 as provided by law."

Notably, as well as not readdressing the Sallaz motion, the magistrate did not hold that Rainey's motion was untimely, that it was not brought timely for hearing, or that it was barred by *res judicata* or any similar theory that would limit or preclude renewal or reconsideration of a previously determined application in the same action. Indeed, the issue of *res judicata*, which is relied upon heavily by the majority opinion to deny relief to Mrs. Worthington appears not to have been raised to nor decided by the magistrate. *Res judicata* is an affirmative defense that must be raised by a defendant before trial or it is waived. *See* I.R.C.P. 8(c). The concept of *res judicata* seems to have crept into the case during the appeal to the district court.[6] Curiously, that portion of the district judge's decision on the intermediate appeal which discusses the application of *res judicata* in this case appears verbatim in another decision by the same district judge, writing as the trial court rather than as an intermediate appellate court, and which is found in the appellate record in the case of *Kathy (Worthington) Thomas v. Robert Worthington,* 132 Idaho 825, 979 P.2d 1183 (1999). The latter case involved the same attorneys who at times represented the litigants in the present appeal, but the parties to the two cases are not the same people. While it might have been appropriate for the district judge to apply *res judicata* to *Thomas v. Worthington* when he was acting as the trial court, it was not appropriately applied here by interjection as an appellate court when *res judicata* had not been raised or addressed in the magistrate division. This Court has held

that the doctrine of *res judicata* cannot be invoked for the first time at the appellate level. *See Bedwell v. Bedwell,* 68 Idaho 405, 195 P.2d 1001 (1948). Because the magistrate was not called upon to apply, nor did he apply, the doctrine of *res judicata,* the propriety of the magistrate's ruling in this case should not be determined on the grounds of *res judicata.*

We are thus left with reviewing the magistrate's decision in which he did not cite any statute, case law or other authority for the proposition that Mrs. Worthington would not be allowed to present calculations of the interest that had accrued pursuant to Idaho Code § 28–22–104(2).

As I have suggested earlier, the right to interest on past-due child support payments arises, not simply as a matter of adjudication, but rather as a matter of right and at the statutory rate established by the legislature in Idaho Code § 28–22–104(2). It seems that the magistrate in this case viewed the accrual of interest question as involving something similar to a form of damages that had to be proved by the plaintiff or lost forever. This is clearly wrong. The interest attached by statute, commencing in 1982. While it would be easiest later for the magistrate to expect Mrs. Worthington to present calculations based on the various interest rates announced each year by the State Treasurer pursuant to I.C. § 28–22–104(2), and permit Mr. Thomas to dispute the accuracy of those calculations, nevertheless the ultimate responsibility for determining the interest rested with the magistrate. Absent a stipulation in the circumstances of a *Davis* case, the court could not deprive the plaintiff of the statutory interest benefit that had attached to the 1982 judgment for child support and had attached as a matter of law.

Finally, I am concerned about a possible effect of the majority opinion on future cases. The announced rule would seem to require a parent who is awarded child support in installments to continually or at least with some reasonable frequency petition the court

---

**6.** The appropriate standard of review in this case requires the Court to review the decision of the magistrate directly and independently of the in-

termediate appellate opinion by the district judge. *Robinson v. Joint School District No. 331,* 105 Idaho 487, 670 P.2d 894 (1983).

where the obligation was ordered and seek the addition of interest in accumulated child support arrearages as the installments become due, or lose the right to the statutory interest because of delay in seeking to have the total amount declared to be some form of "final judgment." To carry this rule further, does it suggest that those attorneys who practice in the domestic relations arena must astutely file periodically with the trial courts (and perhaps each month) applications in each case to determine the amounts of outstanding support, together with accumulated interest, whether or not a writ of execution is sought, in order to avoid claims of malpractice by their clients or former clients in the handling of child support collections? If so, then a nightmare in paperwork and otherwise unnecessary hearings may have been created both for the attorneys and for trial courts in Idaho.

There is a more simple solution. This case should be remanded to the magistrate, consistent with *Hunsaker v. Hunsaker*, with directions to grant Mrs. Worthington's "motion to determine child support arrearage," giving Mr. Thomas an opportunity to dispute any calculations submitted by Mrs. Worthington to establish the current amount of the accrued delinquent support payments including the accumulated statutory interest.

Justice SILAK concurs.